# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| ANTHONY TABER and MARKEETA TABER,  )<br>)<br>Plaintiffs,  )<br>)<br>v.  )<br>)<br>ALLIED WASTE SYSTEMS, INC., d/b/a  )<br>ALLIED WASTE SERVICE OF OKLAHOMA CITY,  )<br>)<br>Defendant and Third-Party Plaintiff,  )<br>)<br>v.  )<br>)<br>MANSFIELD OIL COMPANY OF GAINESVILLE, INC.,)<br>)<br>Third-Party Defendant.  ) | Case No. CIV-13-773-D |

## **O R D E R**

Before the Court is Defendant's Motion for Summary Judgment and Brief in Support [Doc. No. 72]. Also before the Court are the following pending *Daubert* motions:

- Plaintiffs' *Daubert* Motion to Exclude Sherman Lawton, M.D. as an Expert [Doc. No. 69];

- Defendant's Motion to Exclude Expert Testimony of Plaintiffs' Experts Lon Huff and William M. Clark, Ph.D. [Doc. No. 70]; and

- Defendant's Motion to Exclude Expert Testimony of Plaintiffs' Experts Robert Block and J.P. Purswell [Doc. No. 71].

The motions are fully briefed and are at issue.[1]

For the reasons set forth below, the Court grants Defendant's *Daubert* motion regarding Plaintiffs' experts Block and Purswell which results, in turn, in the granting of Defendant's motion

---

[1] Third-Party Defendant, Mansfield Oil Company of Gainesville, Inc. (Mansfield) has moved for summary judgment as to Allied's third-party claims. The Court addresses Mansfield's motion by separate order.

for summary judgment. Disposition of the *Daubert* and summary judgment motions renders moot the remaining pending *Daubert* motions [Doc. Nos. 69, 70].

**I.      Background**

In this action, Plaintiff Anthony Taber (Plaintiff or Taber) alleges that he was injured as a result of the negligence of Defendant, Allied Waste Systems, Inc. d/b/a Allied Waste Service of Oklahoma City (Defendant or Allied). Plaintiff, a business invitee, alleges that a ladder on Allied's property presented an unreasonably dangerous condition. Taber entered Defendant's premises to deliver fuel to a fuel tank located thereon. He climbed the ladder attached to the fuel tank located on Allied's property. Taber fell from the ladder as he was climbing down it. Taber is currently classified as a partial quadriplegic as a result of injuries sustained from the fall. Taber's wife, Markeeta Taber (Mrs. Taber), brings a claim for loss of consortium.

Allied moves for judgment as a matter of law in its favor on grounds Taber's claims are barred by the statute of repose, Okla. Stat. tit. 12, § 109, which Allied contends governs those claims. Alternatively, Allied moves for judgment as a matter of law on grounds Plaintiffs have not demonstrated a causal connection between Allied's alleged negligence and Taber's resulting injuries. Although the Court is sympathetic to the unfortunate circumstances of Mr. Taber's fall and the significant injuries he has suffered, for the reasons set forth below, the Court finds summary judgment in favor of Allied is proper on the issue of causation. The Court, therefore, does not address whether Taber's claims are barred by the statute of repose.

**II.     Standard Governing Summary Judgment**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is

genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). In making this determination, the Court must view the evidence, and draw reasonable inferences therefrom, in the light most favorable to the party opposing summary judgment. *Garrison v. Gambro, Inc.,* 428 F.3d 933, 935 (10th Cir. 2005).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law." *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir.1998) (citation omitted). The burden then shifts to the nonmovant to "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant." *Id.* at 671 (citations omitted); *see also* Fed. R. Civ. P. 56(c)(1)(A). The nonmovant must identify facts by reference to affidavits, deposition transcripts or specific exhibits. *Id.* "The court need consider only the cited materials, but may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

**III.     Undisputed and Material Facts**[2]

On September 10, 2012, Taber arrived at Defendant's business premises, a waste hauling business located in Oklahoma City, Oklahoma, to deliver fuel to Defendant. An Allied employee notified Taber that the clock gauge on the fuel storage tank was not functioning, and Taber would need to go to the top of the tank to "stick the tank" to get a measurement of the volume of fuel in the tank.

A steel ladder is bolted to the side of the fuel storage tank. An Allied maintenance employee is required to climb the ladder to access the top of the tank and drop a dip stick in the tank to confirm the amount of fuel in the tank at least every day. Truck drivers, like Taber, delivering fuel to Allied measure the amount of fuel in the tank either using the clock gauge or by climbing the ladder to access the top of the tank in order to measure the quantity of fuel in the tank with a dipstick. Allied has 75 to 80 trucks that fill up with fuel at the fuel island. The tank is refilled about every three days.

Taber was not concerned about manually sticking the tank and considered it "standard operating procedure." On the date at issue, Taber lined up his truck with the tank and climbed to the top of the tank to stick the tank and get a measurement of the volume of fuel in the tank before he unloaded. He took the measurement and then climbed back down the ladder without incident. Based on the measurement, he determined the tank had sufficient room to unload the fuel he was carrying and he proceeded to unload all of the fuel from his truck into the tank.

---

[2]The facts set forth as undisputed include material facts presented by one or both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). Any facts asserted by a party but disputed, or facts not properly supported are not included. All facts are stated in the light most favorable to Plaintiffs.

After he completed unloading the fuel, Taber climbed back up the ladder to take a second measurement. He reached the top of the tank, took the measurement and began to climb back down the ladder for the second time. Taber took one or two steps, and the next thing he remembers is that he was lying on the ground. Taber has no memory of how he fell. He was found unconscious lying on the ground beneath the ladder.

Taber could not specifically identify anything wrong with the ladder that caused his fall. He could not recall any grime or dirt on the ladder and testified that the ladder was well painted. He could not identify any maintenance issues with the ladder. In fact, Taber could not identify anything odd or unusual about the ladder at all. Taber testified that exactly what caused him to fall is a mystery. No person witnessed the fall.

**IV.** **Whether Taber's Fall Was Proximately Caused by Allied's Alleged Negligence**

In the Amended Complaint [Doc. No. 1-3], Plaintiff alleges that Defendant "allowed, constructed, designed or maintained a dangerous climbing structure that does not meet safety guidelines." *See id.*, ¶ 6. Taber further alleges that his fall "was directly and proximately caused by Defendant's failure to maintain its premises in a reasonably safe condition or failure to design, construct, or maintain a safe climbing structure." *Id.* at ¶ 8. Allied moves for summary judgment on grounds no disputed issues of material fact exist demonstrating that any alleged failure to design, construct or maintain the ladder in a safe manner is what caused Taber to fall.

**A.** **Oklahoma Negligence Law**

In this diversity case, the substantive law of the forum state governs the analysis of the underlying claims. *Dish Network Corp. v. Arrowhead Indem. Co.*, 772 F.3d 856, 867 (10th Cir. 2014) (citation omitted). The Court, therefore, applies Oklahoma law.

5

Allied owed a duty to Taber, as a business invitee, to keep its premises reasonably safe from defects or conditions on its property presenting "hidden dangers, traps, snares or pitfalls" that would not be known to Taber or observed by him in the exercise of ordinary care." *Sullins v. Mills*, 395 P.2d 787, 789 (Okla. 1964) (citation omitted). To establish Allied's negligence, Oklahoma law requires Plaintiffs to establish proof of the following three elements: (1) a duty owed by the defendant to protect the plaintiff from injury; (2) a breach of that duty by the defendant; and (3) the plaintiff's injury was proximately caused by the defendant's breach of that duty. *Beugler v. Burlington Northern & Santa Fe Ry. Co.*, 490 F.3d 1224, 1227 (10th Cir. 2007) (*quoting Iglehart v. Board of County Comm'rs of Rogers County*, 60 P.3d 497, 502 (Okla. 2002)).

"It is axiomatic that the mere fact that an injury occurs carries with it no presumption of negligence." *Gillham v. Lake Country Raceway*, 24 P.3d 858, 860 (Okla. 2001). Moreover, the plaintiff bears the burden to show "the existence of negligence, and that the negligence was the proximate cause of the injury." *Id*. Where there is "no competent evidence from which the jury could reasonably find a causal nexus between the act and the injury" judgment as a matter of law is proper. *Id*.

If evidence as to the cause of an injury is based on speculation, a "prima facie case is not established." *Id*. at 860 (*citing Safeway Stores v. Fuller*, 118 P.2d 649 (Okla. 1941)); s*ee also Hardy v. Southwestern Bell Tel. Co.*, 910 P.2d 1024, 1027 (Okla.1996) (when the matter is one of pure speculation or conjecture or the probabilities are equally balanced, judgment as a matter of law is proper). "Speculation is the antithesis of proximate cause[.]" *Butler v. Oklahoma City Public School System*, 871 P.2d 444, 446 (Okla.Civ.App.1994). As the Oklahoma Supreme Court has explained:

> An inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of

> facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the non-existence of negligence. The inference of negligence must be the more probable and more reasonable inference to be drawn from the evidence.

*Gillham*, 24 P.3d at 860–61 (*quoting Lawson v. Anderson & Kerr Drilling Co*., 84 P.2d 1104 (Okla.1938)); *see also Arrington v. Young*, 366 P.2d 400, 402 (Okla.1961).

### B. Application of Oklahoma Negligence Law to the Facts

As fully set forth, it is undisputed that Mr. Taber does not know why he fell and there are no witnesses to the accident. The Oklahoma Supreme Court has found under like circumstances that the necessary element of proximate cause is lacking and fatal to a negligence claim. *See Gilliam*, 24 P.3d at 860 (claim by minor who testified he somehow caught his leg on a rail, but did not know what it was that made him slip and fall, failed to offer anything more than conjecture and speculation as to the proximate cause of his injury); *Arrington*, 366 P.2d at 401 (where plaintiff alleged she fell in the stairway of a public building and testified the fall might have resulted from the fact the stairwell was dark and she could not see clearly, but did not know what caused her to fall, plaintiff's testimony was too speculative to allow the jury to find proximate cause). Other courts have reached similar conclusions. *See, e.g., Burth v. CPK Constr.*, Case No. 22713, 2006 WL 52253 at *3 (Ohio Ct. App. Jan. 11, 2006) (unpublished op.) (plaintiff could not establish proximate cause to support negligence claim against defendants where plaintiff had no evidence "about what caused his fall off the ladder or how he fell off the ladder"); *Reid. v. American Hoist & Man Lift, Inc.*, Case No. 3-11-0786, 2012 WL 7006979 at * 7 (Ill. Ct. App. Aug. 21, 2012) (unpublished op.) (finding proximate

cause not established as a matter of law where reasons why employee fell from manlift were based on mere speculation and conjecture).[3]

Plaintiffs do not offer any direct evidence to support the proximate cause element of their negligence claim. As Defendant contends, the only circumstantial evidence of causation is the opinion testimony of Plaintiffs' experts.

Oklahoma law allows proximate cause to be established by circumstantial evidence, but such evidence "must have sufficient probative force to constitute the basis for a legal inference, rather than mere speculation" and "[t]he conclusion sought to be proved by the plaintiffs must flow with reasonable certainty and probability from the adduced evidence." *Stroud v. Arthur Andersen & Co.*, 37 P.3d 783, 791 (Okla. 2001) (internal quotations and citation omitted). "[C]ircumstantial evidence

---

[3]The sole authority relied upon by Plaintiffs to defeat Defendant's motion is *Holland v. Urban Contractors, Inc.*, 131 P.3d 139 (Okla. Ct. App. 2005). In *Holland*, a pedestrian fell from a bridge and was killed as a result. The plaintiff alleged a slack in the cable of the bridge allowed the fall to happen. However, no evidence was presented to demonstrate how the fall happened as there were no witnesses to the incident. The court recognized under similar facts that a directed verdict in favor of the defendant would be proper on the issue of causation, but held that the matter should proceed to trial where the plaintiff would bear the burden of proof. *Id*. at 141.

As an initial matter, decisions released for publication by order of the Oklahoma Court of Appeals are persuasive, not precedential. *See* Rule 1.200l, Rules of the Oklahoma Supreme Court. *See also* Okla. Stat. tit. 20, §§ 30.5, 30.14. Moreover, *Holland* is based on Oklahoma procedural law under standards which differ from Federal Rules of Civil Procedure. As the court stated in *Holland*: "[i]n Oklahoma courts, a defendant may not obtain summary adjudication by essentially daring the plaintiff to 'prove it.' It is not enough to show the likelihood that plaintiff will be unable at trial to provide evidence to the [sic] prove the essential elements of the cause of action and a directed verdict will be required." *Id*. at 141(citation omitted). Conversely, under the Federal Rules of Civil Procedure, a party moving for summary judgment on an issue on which the nonmoving party bears the burden of proof at trial need not present any evidence but needs only to point out the absence of evidence on that issue. If the nonmovant then fails to present evidence on the issue, the movant is entitled to summary judgment. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)(addressing Fed. R. Civ. P. 56 governing summary judgment). For these reasons, the Court finds *Holland* neither controlling nor persuasive under the circumstances here.

is not sufficient to establish a conclusion where the circumstances are merely consistent with such conclusion, or where the circumstances give equal support to inconsistent conclusions, or are equally consistent with contradictory hypotheses." *Downs v. Longfellow Corp.*, 351 P.2d 999, 1005 (Okla. 1960).

    **C.**    **Expert Testimony**

As stated above, Defendant has separately filed a *Daubert*[4] motion [Doc. No. 71] to exclude the testimony of Plaintiffs' expert witnesses, Robert Block (Block) and J.P. Purswell (Purswell). As pertinent to Defendant's summary judgment motion, the Court addresses the admissibility of the expert testimony on the issue of causation.

    **1.**    *Daubert* **Standard**

Expert testimony is admissible if it meets the standard set forth in Rule 702 of the Federal Rules of Evidence: "A witness who is qualified as an expert by knowledge, skill, experience, training, or education" can provide opinion testimony if:

    a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

    b) the testimony is based on sufficient facts or data;

    c) the testimony is the product of reliable principles and methods; and

    d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

The district court's admissibility determination has two parts. First, the court must determine whether the expert is qualified. If sufficiently qualified, the court must then determine whether the

---

[4]*Daubert v. Merrell Dow Pharm. Inc.* 509 U.S. 579 (1993).

expert's opinion is reliable and relevant in that it will assist the trier of fact. *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009) (en banc).

The district court "must satisfy itself that the proposed expert testimony is both reliable and relevant, in that it will assist the trier of fact, before permitting a jury to assess such testimony." *United States v. Rodriguez-Feliz*, 450 F.3d 1117, 1122 (10th Cir. 2006). The court must make an admissibility determination as to all expert testimony, not merely that deemed to be "scientific" in nature. *Kumho Tire Co. Ltd. v. Carmichael*, 526 U.S. 137, 147–49 (1999). When the testimony of an expert is challenged, the proponent of the testimony bears the burden of establishing its admissibility. *See Nacchio*, 555 F.3d at 1241; Fed.R.Evid. 104(a).

### 2. The Experts' Opinions

Block and Purswell are both engineers although neither expert has any experience specifically related to the design or construction of ladders. Each expert examined the subject ladder, took and/or reviewed measurements of the same and reviewed OSHA and ANSI standards about the "geometry of the ladder." Of concern to the experts was the ladder's rung spacing and the angle of the rungs as not conforming to these standards.

#### a. Block's Opinion

On the issue of causation, Mr. Block opines: "The failure of Allied Waste to comply with the safety requirements of the standards in the OSHA law and code was a direct or contributing cause of the accident that injured Mr. Taber." *See* Block Opinion [Doc. No. 71-1] at p. 9, ¶ 32(c). Block further opines that the construction and installation of the ladder violated OSHA regulations and ANSI standards and recognized custom and practice in the industry. *See id.*, ¶32(a) and (b).

According to Block, the violation of these standards "made use of the ladder far more hazardous than would otherwise have been involved." *Id*. at p. 7, ¶ 23.[5]

## Qualifications

The court first addresses Block's qualifications. Block's engineering experience is primarily in the field of metallurgy. He describes courses taught by him in this field as directed to "the causes of failures in metals and non-metallic components." *See* Block Opinion [Doc. No. 71-1] at p. 2, ¶ 8. However, he describes his engineering experience – spanning fifty years – to include "analyses of the design, materials, manufacture and warnings that apply to a large number and great variety of industrial machine products." *Id*., ¶ 10. Mr. Block has conducted an estimated one thousand "investigations and evaluations of injury-producing accidents." *Id*. at p. 4. Although this experience is extensive, during his deposition Mr. Block could recall only one case "some years ago" involving a fixed ladder. *See* Block Deposition [Doc. No. 77-5] at pp. 13- 14.

Block's opinion is based on a review of OSHA regulations and ANSI standards and a comparison of those standards to the design and construction of the ladder at issue. Yet, as Defendant points out, Block does not have any experience in ladder design or manufacture, has never served on ANSI committees regarding standards applicable to ladders and has never published any articles about ladder design. As set forth above, Block testified that of the nearly one thousand investigations and evaluations of injury-producing accidents that he conducted, he could recall only one involving a fixed ladder case. As to that one case, the record contains no details regarding the

---

[5]Block opined the geometry of the ladder violated American National Standards Institute (ANSI) Standard A14.3, § 5.1 and Occupational Safety and Health Administration (OSHA) regulation 29 C.F.R. § 1910.27(b)(1)(ii). According to these provisions, ladder rungs should be uniformly spaced twelve inches apart. *See* Block Opinion [Doc. No. 71-1] at p. 6, ¶ 22. The rungs on the ladder at issue were spaced twenty-two inches apart. *See id*.

type of accident or injury, or the nature of his investigation and evaluation. In addition, there is no evidence of Block's experience in the field of accident reconstruction. While the Court certainly respects Block's significant experience in the field of engineering, on the facts presented, the Court finds Block lacks the relevant expertise to opine about the cause of Mr. Taber's fall.

### Reliability

Although the Court could exclude Block's opinion on qualification grounds alone, the Court further addresses the reliability of Block's opinion. During his deposition, Block acknowledged that Taber did not know how he fell and that no one witnessed the fall. *See* Block Deposition [Doc. No. 71-2] at pp. 23-24. Block was critical of the inclination of the steps of the ladder but admitted no industry standards or regulations address the design principles governing such inclination. *Id.* at pp. 46-48, 65. Block's report is silent as to other causes of the fall. Nor does the report include any attempt at reconstruction of the fall to determine its cause. Significantly, Block conceded that people fall off ladders even when the ladders conform to safety standards. *See* Block Deposition [Doc. No. 77-5] at pp. 58-59.

The proponent of expert testimony must show "a grounding in the methods and procedures of science which must be based on actual knowledge and not subjective belief or unaccepted speculation." *Mitchell v. Gencorp Inc.*, 165 F.3d 778, 780 (10th Cir.1999). "Generally, the district court should focus on an expert's methodology rather than the conclusions it generates." *Goebel v. Denver and Rio Grande W. R.R. Co.*, 346 F.3d 987, 992 (10th Cir. 2000). "However, an expert's conclusions are not immune from scrutiny: 'A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Id.* (*quoting General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). "[N]othing in either *Daubert* or the Federal Rules of Evidence requires

a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

Block's opinion on the issue of causation is not reliable but is impermissibly based on his subjective beliefs and unsupported speculation. Initially, the Court finds that whether the design of the ladder violates OSHA and ANSI standards more appropriately addresses the issue of whether Defendant breached the standard of care and not the issue of causation or ultimate liability. *See, e.g., Martin v. MAPCO Ammonia Pipeline, Inc.*, 866 F. Supp. 1304, 1308 (D. Kan. 1994) (("OSHA standards can be admitted to show evidence relating to standard of care" even though they "cannot be considered conclusive proof of negligence or the absence of negligence."); *Scott v. Matlack, Inc.*, 39 P.3d 1160, 1170 (Colo. 2002) (OSHA regulations admissible in negligence action "as some indication of the standard of care with which a reasonable person in the defendant's position should comply").[6]

Block's conclusion that it was more likely than not that the ladder's asserted design defect caused Taber's fall is based on the design's lack of compliance with OSHA or ANSI design standards. But as the Oklahoma Supreme Court has made clear, and consistent with the cases cited above, "[s]imply because the law may presume negligence from a person's violation of [a] federal regulation does not mean that the law presumes that such negligence was the proximate cause of the

---

[6]Although OSHA regulations have been deemed admissible even where the negligence action is brought by a plaintiff, like Taber, who is not an employee of the defendant, such admissibility has been limited to evidence of the standard of care. *See, e.g., Granados v. Northern Nevada High Speed, LLC*, No. 3:14-cv-00081-LRH-VPC, 2014 WL 5503118 at * 4 (D. Nev. Oct. 30, 2014) (unpublished op.) ("More recently, a number of courts have expressly held that OSHA violations can be considered as evidence of standard of care for injuries sustained by non-employees.").

13

harm inflicted." *Howard v. Zimmer*, 299 P.3d 463, 474 (Okla. 2013) (addressing issue in context of claim for negligence per se).

In addition, Block's opinion lacks any grounding in scientific knowledge. The opinion does not set forth any underlying methodology, any statistical analysis related to ladder injuries, or any other supporting data. The Tenth Circuit Court of Appeals' recent decision in *Heer v. Costco Wholesale Corp.*, 589 Fed. Appx. 854 (10th Cir. 2014), though unpublished, is instructive as it involves closely related facts. In *Heer*, Plaintiff fell from a step stool when it allegedly collapsed. She brought a products liability action against the defendant who sold the step stool and she alleged the step stool was defectively designed.

The district court entered summary judgment in favor of the defendant concluding the plaintiff had not submitted evidence to demonstrate a defect in the stool's design. On appeal, the plaintiff challenged the district court's exclusion of the testimony of her expert witness, Mr. Stolz. The plaintiff claimed Mr. Stolz's testimony constituted circumstantial evidence to support a finding that the step stool was defective.

The Tenth Circuit upheld the district court's decision to exclude Mr. Stolz's expert testimony as unreliable. The court found Mr. Stolz's testimony was "plagued" by the analytical gap between the data and the opinion offered. *Id*. at 861 (*citing Joiner*, 522 U.S. at 146). As the court stated:

> The report provided no scientific basis for its conclusion that a defect in the step stool's design caused Ms. Heer's fall. Mr. Stolz made no attempt to test his theory, nor did he make any calculations, apply any engineering principles to his causation theory, discuss any industry standards, or mention any scientific authority that supported his theory. Without scientific or technical support for Mr. Stolz's theory, the district court was left with only Mr. Stolz's conclusory opinion that the step stool was defective. Such an unsubstantiated basis is insufficient under Rule 702, and the district court was therefore within its discretion in determining Mr. Stolz's opinion was not reliable.

14

*Id.* (citations omitted).[7]

Similarly, in *Rogers v. Barlow Eddy Jenkins P.A.*, 22 So.3d 1219 (Miss. Ct. App. 2009), the court excluded the testimony of two expert witnesses offered to establish the design and installation of a ladder caused the plaintiff's fall and granted summary judgment to the defendant. In *Rogers*, an individual died after falling off a wall-mounted ladder at a youth detention center. His estate sued the center's architects alleging negligence as a result of the design, construction and placement of the ladder. The plaintiff's claim was based on the fact that the wall-mounted ladder did not meet OSHA-specified dimensions.

The trial court found the expert testimony inadmissible and the appellate court affirmed on grounds the two experts' opinions constituted "a mere guess, speculation or conjecture on their part." *Id.* at 1223. Dr. Hall testified that the ladder's condition more likely than not contributed to Rogers's fall, but he could not rule out "other things," such as Rogers's health, that might have caused him to fall. *Id.* at 1223–24. Dr. Shenefelt similarly testified that circumstances other than the ladder's design, such as Rogers possibly suffering a stroke, could have caused him to fall. *Id.* at 1224 . Dr. Shenefelt felt that "cause and effect" were established by the fact that the ladder did not meet OSHA's design dimensions and that Rogers fell from the ladder. *Id.* at 1224. The court held that without Dr. Hall and Dr. Shenefelt's "conclusory statements and speculation, there is no way to make the leap from the failure to meet OSHA's ladder dimensions to the proximate cause of Rogers's fall." *Id.* at 1225–26.

---

[7]The Court recognizes that in *Heer*, the expert failed to even address ANSI standards. As the Tenth Circuit noted, "compliance with industry standards is relevant to a reliability determination under Rule 702." *Id.* at 862. But in *Heer*, the failure to address industry standards was only one of multiple deficiencies in the expert's opinion that rendered it unreliable.

15

In this case, the expert opinion testimony of Block is similar to the expert testimony at issue in *Heer* and *Rogers*. Block's theory of causation cannot be tested. Block agrees that it remains a mystery as to how and why Plaintiff fell. And significantly, Block did not opine that had the ladder been constructed in accordance with OSHA regulations and ANSI standards, Plaintiff would not have fallen. Indeed Block admitted that people fall from ladders even when they are designed in conformance with industry standards. Moreover, some evidence of other causes exists, although that evidence is similarly speculative. As in *Rogers*, Mr. Taber's health might have caused his fall or the condition of his boots might have caused or contributed to his fall. Block's expert opinion testimony constitutes a classic example of "opinion evidence that is connected to existing data only by the *ipse dixit* of the expert." *Joiner*, 522 U.S. at 146.

### b. Purswell's Opinion

Mr. Purswell opines: "[I]t is more likely than not that the very large inter-rung spacing caused or contributed to Mr. Taber's fall from the ladder." *See* Purswell Opinion [Doc. No. 71-10] at p. 2, ¶ 1. Mr. Purswell further opines: "[I]t is more likely than not that the angled rungs caused or contributed to Mr. Taber's fall from the ladder." *See id*. at p. 3, ¶ 3.

#### Qualifications

Purswell, like Block, is a professional engineer. *See* Purswell's Curriculum Vitae [Doc. No. 71-9] His professional experience includes consulting with "manufacturers and attorneys on ergonomics and safety issues." *Id*. He also "[p]erforms hazard analyses of products for manufacturers" and "[c]onsults with manufacturers on the development of warnings and instructions for new and redesigned products." *Id*. Additionally, he "[c]onsults with employers on the development and implementation of safe and ergonomically sound work practices." *Id*. Purswell's

16

work experience includes research and interpretation of OSHA and ANSI standards including "Fall Protection Standards." *Id*. Purswell testified that he has been involved in one other case involving a fall from a ladder. The ladder was a portable ladder, not a fixed ladder, and the subject of his expertise in that case related to whether a warning should have been provided as to the ladder's use. *See* Purswell Deposition [Doc. No. 71-11] at pp. 12-15. Although Purswell similarly does not have any experience in the design or manufacture of ladders, his field of engineering studies – which includes ergonomics, his work experience and his specific research and application of OSHA regulations and ANSI standards deems him qualified to render an expert opinion.

### **Reliability**

But the Court finds that although Purswell is qualified, his opinion is not reliable. Purswell did not attempt to "perform any type of experimentation," *i.e*., reconstruct the accident. *See* Purswell Deposition [Doc. No. 71-11] at p. 12. Despite his experience with ANSI standards, Purswell testified he did not know how the standards – adopting 12-inch rung spacing – were created and whether those standards are based on any scientific principles or safety standards. *Id*. at pp. 29-31, 34-35. Purswell testified that studies had not found a great difference between rung spacing ranging from 10 - 15 inches apart, and that no studies had assessed rung spacing outside the range of 15 inches. *Id*. at p. 31.

Like Block, Purswell did not consider other factors that may have caused or contributed to Taber's fall. *Id*. at p. 90-91. Indeed, when asked about other causes, Purswell stated he would be speculating as to other causes. *Id*. at p. 93. He testified a videotape of the fall would be helpful, *see id*. at p. 93, acknowledging that no one knows why or how Mr. Taber fell. *Id*. at p. 103. He admitted that he had no evidence to support the conclusion that Mr. Taber slipped off the angled

17

rung of the ladder. *Id*. at p. 111. He acknowledged that the fall could have resulted from other causes including the condition of Taber's boots, something on his gloves or even a seizure. *Id*. at p. 148. Finally, Purswell acknowledged that out of approximately 2500 uses of the ladder at Allied Waste, Mr. Taber's fall is the only one reported. *Id*. at p. 141-142.

For substantially the same reasons as set forth regarding the unreliability of Block's opinion, the Court concludes Purswell's opinion is also unreliable. His conclusions as to the cause of Taber's fall are based on speculation and his "say so" but not on any reliable methodology. Tellingly, Purswell acknowledged that to express an opinion as to other causes would require him to speculate. And Purswell admitted he did not address the significant number of times the ladder had been used without incident.

It is well-established that scientific knowledge, "implies a grounding in the methods and procedures of science" which must be based on actual knowledge and not "subjective belief or unsupported speculation." *Daubert*, 509 U.S. at 590. In other words, "an inference or assertion must be derived by the scientific method . . . [and] must be supported by appropriate validation – *i.e.* 'good grounds,' based on what is known." *Id*. The Tenth Circuit has consistently excluded from trial expert testimony that was based on speculation. *See, e.g., Mitchell*, 165 F.3d at 781 (excluding expert testimony unsupported by scientific data as based on "little more than guesswork" and stating that "[g]uesses, even if educated, are insufficient to prove the level of exposure in a toxic tort case."); *Jetcraft Corp. v. Flight Safety Int'l*, 16 F.3d 362, 366 (10th Cir.1993) (expert testimony excluded as professional speculation); *Eastridge Development Co. v. Halpert Assocs., Inc*., 853 F.2d 772, 783 (10th Cir.1988) ("under the circumstances of this case, including the tentative and speculative nature of the [expert] witness' proposed testimony, we find that the exclusion of such

evidence was not an abuse of discretion"). Here, the expert opinion testimony of Block and Purswell is too speculative to render it admissible.

### **Relevance of Block and Purswell's Expert Testimony**

As a final matter, the Court considers "whether [the] expert testimony . . . is sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute." *Daubert*, 509 U.S. at 591 (*quoting United States v. Downing*, 753 F.2d 1224, 1242 (3d Cir.1985)). The Court finds the opinions of Block and Purswell do not assist the trier of fact on the issue of causation. The angle and spacing of the ladder's rungs are apparent to a lay person. Purswell testified that "the information on the physical characteristics of a ladder design are not something that you need to really have an expert come and interpret for you." Purswell Deposition [Doc. No. 71-11] at p. 24; *see also id.*, at p. 105. Moreover, the fact the rung spacing does not comply with OSHA regulations and ANSI standards does not require expert testimony. The ANSI and OSHA requirements are not overly complicated. They provide that the rungs should be spaced twelve inches apart. The rungs on the ladder at issue are not twelve inches apart. This is a straightforward determination based on simple measurement and does not require the assistance of an expert witness.

For all of the reasons set forth, the Court finds the the opinions of Block and Purswell on the issue of causation are inadmissible. Accordingly, Defendant's *Daubert* Motion is granted.

## V.     Conclusion

As set forth above, Plaintiffs offer no direct evidence on the issue of causation and the Court deems the circumstantial evidence, consisting of the opinions of Plaintiffs' experts Block and Purswell, inadmissible. Accordingly, because Plaintiffs support causation only with evidence speculative in nature, Defendant is entitled to judgment as a matter of law on Plaintiffs' negligence claim. Plaintiffs' loss of consortium claim is derivative of the negligence claim. *See Laws v. Fisher*, 513 P.2d 876 (Okla. 1973). Therefore, Defendant is also entitled to judgment as a matter of law on the loss of consortium claim.

IT IS THEREFORE ORDERED that Defendant's Motion for Summary Judgment [Doc. No. 72] is GRANTED.

IT IS FURTHER ORDERED that Defendant's Motion to Exclude Expert Testimony of Plaintiffs' Experts Robert Block and J.P. Purswell [Doc. No. 71] is GRANTED.

IT IS FURTHER ORDERED that Plaintiffs' *Daubert* Motion to Exclude Sherman Lawton, M.D. as an Expert [Doc. No. 69] and Defendant's Motion to Exclude Expert Testimony of Plaintiffs' Experts Lon Huff and William M. Clark, Ph.D. [Doc. No. 70] are DENIED as MOOT.

IT IS SO ORDERED this 11th day of March, 2015.

_____
TIMOTHY D. DEGIUSTI
UNITED STATES DISTRICT JUDGE