IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

ANTHONY TABER and MARKEETA TABER,  )
                                                                   )
        Plaintiffs,                                        )
                                                                   )
v.                                                                       )     Case No. CIV-13-773-D
                                                                   )
ALLIED WASTE SYSTEMS, INC., d/b/a      )
ALLIED WASTE SERVICE OF OKLAHOMA CITY, )
                                                                   )
        Defendant and Third-Party Plaintiff,     )
                                                                   )
v.                                                                       )
                                                                   )
MANSFIELD OIL COMPANY OF GAINESVILLE, INC.,)
                                                                   )
        Third-Party Defendant.             )

**O R D E R**

Before the Court is the Motion for Summary Judgment [Doc. No. 66] of Third-Party Defendant Mansfield Oil Company of Gainesville, Inc. (Mansfield). Defendant and Third-Party Plaintiff, Allied Waste Systems, Inc., d/b/a Allied Waste Service of Oklahoma City (Allied) has filed a response [Doc. No. 73] and Mansfield has filed a reply [Doc. No. 74]. The matter is fully briefed and ready for decision.

**I.    Introduction**

This action arises out of injuries to Plaintiff, Anthony Taber (Taber), as a result of falling from a ladder attached to a fuel tank located on Allied's business premises. At the time of the fall, Taber was delivering fuel supplied by Mansfield to Allied. In July 2013, Taber filed suit against Allied alleging that his injuries were due to Allied's negligence. Specifically, Taber alleges that Allied "allowed, constructed, designed or maintained a dangerous climbing structure that does not meet safety guidelines." *See* Amended Complaint [Doc. No. 1-3] at ¶ 6. Taber further alleges that

his fall "was directly and proximately caused by [Allied's] failure to maintain its premises in a reasonably safe condition or failure to design, construct, or maintain a safe climbing structure. *Id*. at ¶ 8. Taber did not allege negligence on the part of Mansfield. By separate order the Court has entered judgment in favor of Allied as a matter of law because the undisputed material facts fail to demonstrate Taber's injuries were proximately caused by Allied's alleged negligence. *See* Order [Doc. No. 82].

In the Third-Party Complaint, Allied brings two claims against Mansfield: (1) a claim for breach of contract; and (2) a claim for negligent breach of contract. The contract at issue is a master services agreement between Allied's parent company, Republic Services Procurement, Inc. (Republic), and Mansfield. Allied contends Mansfield has breached the indemnification provisions of the parties' agreement. As part of its claim for breach of contract Allied alleges "[i]n the event Allied Waste is found liable for damages, it seeks indemnification from Third-Party Defendant Mansfield Oil for any liability incurred due to damages caused as a result of the allegations contained in Plaintiff's Petition." *See* Third-Party Complaint [Doc. No. 12] at ¶ 15. Allied also brings a claim against Allied for negligent breach of contract. Allied contends Mansfield negligently performed its obligations under the master services agreement.

Mansfield filed its motion for summary judgment as to Allied's third-party claims before the Court had ruled on Allied's motion for summary judgment as to Plaintiffs' claims. The Court's order granting summary judgment in favor of Allied largely renders moot its claim against Mansfield for the alleged breach of its contractual indemnification obligations. Moreover, in responding to Mansfield's motion, Allied acknowledges that its claims are dependent upon a finding that Taber's injuries resulted from his own negligence or the negligence of UPT, a subcontractor of Mansfield.

2

As set forth below, the undisputed material facts before the Court on the pending summary judgment motion fail to establish such negligence. In addition, the parties' agreement does not encompass the conduct which serves as the basis for Taber's claims and allegedly gives rise to Mansfield's contractual indemnification obligations. For all these reasons – as more fully discussed herein – Mansfield is entitled to judgment as a matter of law in its favor on Allied's third-party claims.

## II.    Summary Judgment Standard

Summary judgment is proper "if the movant shows there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A material fact is one that "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is genuine if the evidence is such that a reasonable jury could return a verdict for either party. *Id.* at 255. All facts and reasonable inferences must be viewed in the light most favorable to the nonmoving party. *Id.* If a party who would bear the burden of proof at trial lacks evidence on an essential element of a claim, then all other factual issues concerning the claim become immaterial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The movant bears the initial burden of demonstrating the absence of a dispute of material fact warranting summary judgment. *Celotex*, 477 U.S. at 322–23. If the movant carries this burden, the nonmovant must then go beyond the pleadings and "set forth specific facts" that would be admissible in evidence and that show a genuine issue for trial. *See Anderson*, 477 U.S. at 248; *Celotex*, 477 U.S. at 324; *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir.1998). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Adler*, 144 F.3d at 671; *see also* Fed.R.Civ.P. 56(c)(1)(A). "The court need consider only the cited materials, but may consider other materials in the record."

*See* Fed.R.Civ.P. 56(c)(3); *see also Adler*, 144 F.3d at 672. The Court's inquiry is whether the facts and evidence identified by the parties present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52. Conclusory allegations will not create a genuine issue of material fact defeating a summary judgment motion. *White v. York Int'l Corp.*, 45 F.3d 357, 363 (10th Cir.1995).

### III.  Undisputed and Material Facts[1]

On September 21, 2011, Allied, by and through its parent company, Republic, entered into a "Master Services Agreement for the Sale of Petroleum and Related Services" (Agreement) with Mansfield. Pursuant to the Agreement, Republic is "Buyer" and Mansfield is "Supplier. *See* Agreement [Doc. No. 66-1]. As represented in the parties' briefing, Republic is the parent corporation of Allied. For ease of reference and to avoid confusion, the Court will refer to "Buyer" as Allied.

The Agreement includes a defense and indemnity provision which provides that Mansfield agrees to "indemnify, defend and hold harmless" Allied "from and against any and all Losses, in any way caused by or arising from . . . the negligence" of Mansfield "or its subsidiaries or affiliates, subcontractors, employees, agents or servants in the performance of the work under this Agreement. . . ." *See id.*, ¶ 13.1. The Agreement further provides that Mansfield's obligation to

---

[1] The facts set forth as undisputed include material facts presented by one or both parties that are supported as required by Fed. R. Civ. P. 56(c)(1). Any facts asserted by a party but disputed, or facts not properly supported are not included. All facts are stated in the light most favorable to Allied as the non-moving party.

defend and indemnify does not apply "to the extent the Losses are caused by the negligence" of Allied. *See id.*[2]

Pursuant to the Agreement, Allied is the "owner and operator of all of the motor fuel storage tanks" in which the fuel supplied by Mansfield was to be deposited. *Id.*, ¶ 9.7. Additionally, the Agreement expressly states that Mansfield, as the fuel supplier, "has no ownership interest, right or responsibility whatsoever regarding any of such Fuel Storage Tanks." *Id*.

On September 10, 2012, Mansfield delivered approximately 7,500 gallons of diesel fuel to Allied's facility under the Agreement. *See* Freight Bill [Doc. No. 66-2] and Bill of Lading [Doc. No. 66-3]. Mansfield "engaged" UPT to facilitate delivery of its fuel to Allied. UPT, in turn, "engaged" Taber, a truck driver, to deliver the fuel.[3]

Taber arrived at Allied to deliver the fuel and was told the clock gauge on the fuel tank was not working. Therefore, Taber was required to climb a ladder attached to the tank to take a physical measurement of the volume with a "fuel stick" before and after his fuel deposit. *See* Plaintiff's Answer to Allied Waste's Interrogatory No. 11 [Doc. No. 66-4]. When he had finished unloading the fuel and checking the measurement of the tank, Taber began to climb back down the ladder. As he climbed down, he fell. *Id*.

---

[2]The Court's order granting summary judgment in favor of Allied precludes a finding that Taber's injuries were caused by Allied's negligence.

[3]Mansfield contends Taber is an independent contractor providing services to its subcontractor, an entity known as UPT. Allied contends, conversely, that Taber is an employee of UPT and that his acts are therefore imputed to Mansfield. Disputed issues of fact exist as to whether Taber qualifies as a subcontractor, employee, agent or servant of Mansfield as required by the Master Services Agreement. The Court need not resolve those factual disputes. Construing those facts in the light most favorable to Allied as the non-moving party, even if Taber so qualifies, as discussed *infra*, there is no causal connection between Taber's injuries and the alleged negligence of Taber and/or UPT.

After Taber filed suit against Allied for negligence based on premises liability, Allied tendered defense of the case to Mansfield relying upon the indemnity provision of the Master Services Agreement. *See* correspondence dated July 2, 2014 [Doc. No. 66-6]. Mansfield did not assume the defense on behalf of Allied.

## IV.     Discussion

### A.     Breach of Contract[4]

Mansfield moves for summary judgment on Allied's breach of contract claim. First, Mansfield contends Taber is not a subcontractor, employee or agent of Mansfield but is "an independent owner-operator engaged by UPT." *See* Mansfield's Motion at pp. 7-8. Second, Mansfield contends Taber has made no allegation that *Mansfield* was negligent. *See id.* at pp. 7-10. Mansfield further contends that the only negligence alleged by Plaintiff is against Allied based on premises liability which is outside the scope of the indemnification provision of the Agreement. Finally, Mansfield contends the Agreement expressly relieves Mansfield from any responsibility with respect to Allied's fuel tanks. *Id.* at pp. 7, 10.

As to Mansfield's first two arguments, Allied contends disputed issues of material fact exist as to whether Taber is an employee or independent contractor of UPT. Allied further contends *if* Taber is an employee of UPT, Mansfield is liable because disputed issues of fact exist as to both

---

[4]Pursuant to the terms of the Master Services Agreement, Mansfield contends Arizona law governs its interpretation. *See* Agreement [Doc. No. 66-1], ¶ 24.1. *See also* Mansfield's Statement of Undisputed Material Facts, ¶ 2. Allied does not dispute that Arizona law governs, but contends the fact is "irrelevant because Arizona and Oklahoma law do not differ in any material respect with regard to the interpretation of the terms of the MSA." *See* Allied's Response to Mansfield's Statement of Undisputed Facts, ¶ 2.

Taber's negligence and UPT's negligence and that negligence is imputed to Mansfield. Allied wholly fails to address Mansfield's argument concerning the scope of indemnification.

Under Arizona law, the language of the contract governs the extent of the contractual duty to defend and indemnify. *Evans Withycombe, Inc. v. Western Innovations, Inc.*, 159 P.3d 547, 552 (Ariz. Ct. App. 2006) (*citing INA Ins. Co. of North America v. Valley Forge Ins. Co.*, 722 P.2d 975, 979 (Ariz. App. 1986)). The parties do not dispute that the plain language of the Agreement requires Mansfield to defend and indemnify Allied for any loss resulting from Mansfield's own negligence or the negligence of its subcontractors, employees, agents or servants. As set forth, the Court assumes, without deciding, that Taber and/or UPT qualify as subcontractors, employees, agents or servants of Mansfield. However, Allied cannot prevail on its claims against Mansfield because the summary judgment record fails as a matter of law to demonstrate that Taber's injury resulted from his own negligence or the negligence of UPT.

The Court previously addressed in detail the factual circumstances surrounding Taber's fall and Oklahoma law governing Plaintiffs' negligence claim against Allied. Specifically, the Court addressed the requirements for establishing the requisite element of causation necessary to support a negligence claim. As set forth in that Order, Taber could not remember why he fell and no one witnessed the fall. The Court concluded that whether Taber's fall resulted from the design of the ladder was wholly speculative. The Court adopts the analysis of the facts and governing Oklahoma law as set forth in its prior Order and concludes, for substantially the same reasons, that the summary judgment record fails to establish a dispute of material fact as to causation and, therefore, Allied's claim premised on negligence fails as a matter of law.

Allied contends Taber was negligent because he failed to disclose to the Department of Public Safety and/or the Department of Transportation an incident in May 2009 in which he suffered a loss of consciousness. Allied further contends Taber was negligent because at the time of his fall, he was wearing boots with worn soles that could have contributed to his fall.

As to UPT, Allied contends UPT failed to investigate Taber's medical qualifications to operate UPT's trucks prior to hiring him in 2011. Allied further contends UPT was negligent because it failed to adequately monitor the condition of Taber's boots.

Allied bases its claim that Taber was not medically qualified to operate a truck on an episode in May 2009 in which Allied alleges Taber suffered "multiple seizures." However, at issue in this lawsuit is the injury Taber suffered as a result of falling off a ladder. Taber was not injured while driving a truck. Evidence related to Taber's qualifications to drive a truck, therefore, is not relevant to the injury-causing conduct at issue.

Moreover, the evidence Allied advances to support its claim is wholly speculative. In May 2009, more than three years prior to the incident at issue, Taber was admitted to Norman Regional Hospital regarding an "episode of loss of consciousness." *See* Taber's medical records [Doc. No. 73-4]. A video EEG showed "no evidence of seizure activity." *Id.* In a follow-up visit on June 8, 2009, Dr. Duncan, the attending doctor, states that Taber "has not had any further episodes of loss of consciousness" and did not continue taking seizure medication following his hospital discharge. *Id.* [Doc. No. 73-6]. Dr. Duncan further states the he "could not assure [Taber] that he would not have further episodes of loss of consciousness even though [Dr. Duncan] believe[d] that [Taber's] problem [was] most likely emotional in origin." *Id.*

Based on the May 2009 medical records, Plaintiffs' expert, Dr. Sherman Lawton, has opined that it was "more likely than not" that Taber's fall from the ladder "was the result of seizure activity accounting for the prolonged loss of consciousness thereafter without CT evidence of a significant head injury." *See* Statement of Sherman B. Lawton [Doc. No. 73-3] at ECF p. 3.[5] Dr. Lawton never examined or treated Taber. He stated that he had "no criticism of the evaluation of Dr. Duncan." *Id*. During his deposition Dr. Lawton acknowledged that Taber "probably" had a seizure "but it's hard to prove one way or another." *See* Lawton Deposition [Doc. No. 73-12] at p. 17.

The evidence relied upon by Allied shows only that Taber's fall might have been the result of a seizure. Because Taber did not know why or how he fell, and no one witnessed the fall, it is equally plausible that Taber's fall was the result of other causes. As set forth in the Court's prior order, "[a]n inference of negligence must be based upon something other than mere conjecture or speculation, and it is not sufficient to introduce evidence of a state of facts simply consistent with or indicating a mere possibility, or which suggests with equal force and leaves fully as reasonable an inference of the non-existence of negligence." *Gillham v. Lake Country Raceway*, 24 P.3d 858, 861 (Okla. 2001) (citation omitted). Instead, "[t]he inference of negligence must be the *more* probable and *more* reasonable inference to be drawn from the evidence." *Id*. Accordingly, Allied's conjectural evidence that Taber's fall resulted from a seizure is insufficient to show a genuine issue of material fact or that Mansfield is not entitled to summary judgment as a matter of law.

As to the condition of Taber's boots, Allied relies on the deposition testimony of J.P. Purswell, an expert retained by Plaintiffs. As fully addressed in the Court's Order granting summary

---

[5]Plaintiffs filed a *Daubert* motion [Doc. No. 69] to exclude Dr. Sherman's testimony. In its prior Order, the Court denied the motion as moot as a result of the entry of summary judgment in favor of Allied.

judgment in favor of Allied, Mr. Purswell's expert opinion is limited to whether the design of the ladder from which Taber fell caused or contributed to Taber's fall. The Court determined Mr. Purswell's opinion was inadmissible under *Daubert*[6] as unreliable due to its speculative nature.

Significantly, with respect to the pending motion, Mr. Purswell did not examine Mr. Taber's boots and was not retained to opine about the condition of the boots. Looking at a photograph of Taber's boots, Mr. Purswell testified during his deposition that the boots might have some wear but that he did not believe the boots were "outside the realm of what would be reasonable to go up and down a ladder" and further that he did not consider the boots "inappropriate for the task Mr. Taber was doing." *See* Purswell Deposition [Doc. No. 74-1] at p. 207, 211-213. He further testified that it was not possible for him to determine whether Mr. Taber would not have fallen if he were wearing a different pair of boots. *Id.* at p. 212. Because Mr. Purswell's testimony is wholly speculative with respect to whether the condition of Mr. Taber's boots could have contributed to his fall, the evidence is insufficient to create a disputed issue of material fact.

Finally, the Court agrees with Mansfield that the conduct at issue does not fall within the scope of obligations defined by ¶ 13.1 of the Agreement. As set forth, the Agreement also provides that Allied is the owner and operator of the fuel storage tanks and that Mansfield has no ownership in or responsibility whatsoever regarding the fuel tanks. Mr. Taber fell while climbing down the ladder attached to the fuel tank. The only claim of negligence brought by Plaintiffs is based on the design and construction of the ladder. Although Allied interjects issues of contributory negligence by Tabor and/or UPT, as discussed the evidence relied upon by Allied to support such allegations is wholly conclusory and speculative. Accordingly, the undisputed material facts demonstrate that

---

[6]*Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579 (1993).

Mansfield is entitled to judgment in its favor as a matter of law on Allied's claim for breach of contract.

B.     **Negligent Breach of Contract**

Allied contends Mansfield negligently performed certain obligations under the Agreement which provide, in relevant part, that Mansfield "is responsible for all acts of agents and employees, if any, while engaged in the performance of the Services and delivery of the Goods" and will "perform the Services in a professional and competent manner, in compliance with all Applicable Laws, and with all industry standards." *See* Agreement, ¶¶ 14.1, 34. Allied's claim for negligent breach of contract fails for substantially the same reasons as its breach of contract claim. Allied contends Mansfield did not comply with applicable law and industry standards but relies on the same speculative evidence as to Taber's alleged "seizure" history and the condition of his boots to show that the failure to comply with such standards resulted in the injury to Taber at issue. Allied has failed to demonstrate a genuine issue of material fact that Mansfield's alleged negligent breach of its contractual obligations proximately caused the injury at issue. Accordingly, Mansfield is also entitled to judgment as a matter of law in its favor on Allied's claim for negligent breach of contract.[7]

---

[7]It appears that a claim for negligent breach of contract may not be actionable under Arizona law. *See Jones v. Bank of America, N.A.*, No. CV-09-2129-PHX-JAT, 2010 WL 2228517 at * 2 (D. Ariz. June 1, 2010) (unpublished op.) (dismissing negligence claim alleging that the defendant owed a duty "to ensure that plaintiff's contractual rights would be protected" and noting that the plaintiff had not cited "any legal authority indicating Arizona recognizes a claim for negligent breach of contract" nor was the court aware of any such authority). Oklahoma law does, however, recognize such a cause of action. *Keel v. Titan Construction Corp.*, 639 P.2d 1228, 1232 (Okla. 1981) ("Accompanying every contract is a common-law duty to perform . . . with care, skill, reasonable experience and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of contract."). Allied contends Oklahoma law governs
(continued...)

IT IS THEREFORE ORDERED that the Motion for Summary Judgment [Doc. No. 66] of Third-Party Defendant Mansfield Oil Company of Gainesville, Inc. is GRANTED.

IT IS SO ORDERED this 11th day of March, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE

---

[7](...continued)
the claim and Mansfield has not addressed the issue. The Court assumes, without deciding, that Oklahoma law governs.